**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No.    24-cr-00212-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    JOSHUA LYBOLT, and
2.    MAGDALENA LYBOLT,

      Defendants.

---

**INDICTMENT**

---

The Grand Jury charges that:

**<u>COUNTS 1-5</u>**
**Wire Fraud and Aiding and Abetting, 18 U.S.C. §§ 1343, 2(a)**

**<u>Background on the CARES Act Programs</u>**

1.      The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses.

2.      In or around March 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and expanded existing programs, including programs created or administered by the SBA. Two

1

sources of funding for small businesses were the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loans ("EIDL") program. The CARES Act mandated that only businesses in operation on February 15, 2020, for PPP, or before February 1, 2020, for EIDL, were eligible under the programs.

3.      The EIDL program was an SBA program that provided low-interest financing to small businesses in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses, known as Economic Injury Disaster Grants ("EIDG"). The amount of the EIDG was determined by the number of employees the applicant certified having. The EIDGs did not need to be repaid.

4.      Until April 2021, under the EIDL program, a small business could receive a loan from the SBA in an amount of up to six months of working capital with a maximum of $150,000. In April 2021, the SBA increased the EIDL limit to allow small businesses to receive loans in the amount of up to 24 months of working capital with a maximum of $500,000. Thereafter, in September 2021, the SBA increased the EIDL limit to $2 million.

5.      In order to obtain an EIDL and/or EIDG, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees and the entity's gross business revenues and cost of goods sold in the twelve months prior to January 31, 2020. The amount of

the loan, if approved, was determined in part based on the information provided concerning the gross revenue and cost of goods sold. For loans greater than $25,000, the SBA withheld a $100 fee from the total EIDL amount for filing a UCC-1 lien on the borrower's business assets. EIDL funds were issued directly by the SBA and were permitted to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rents, and mortgage payments. Before the SBA disbursed EIDL funds, an applicant generally had to digitally sign a contract, referred to as a Loan Authorization and Agreement.

6.     The CARES Act further authorized the PPP program, which provided forgivable loans to small businesses. To obtain a PPP loan, a qualifying small business was required to submit a PPP loan application, signed by an authorized representative of the business, in which the applicant acknowledged the program rules and made certain affirmative certifications. The applicant was also required to state the business's: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the loan amount that the business was eligible to receive under the PPP. Businesses were also required to provide documentation showing their payroll expenses, such as filed federal income tax documents.

7.     PPP loan applications were received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, but the loans were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender

to the SBA in the course of processing the loan. The SBA paid participating lenders a processing fee for each funded PPP loan.

8.      The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, mortgage interest payments, and utilities. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, real estate, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

9.      Small businesses could request forgiveness of up to the full amount of the PPP loan by filing a forgiveness application with the same lender. The forgiveness application required the business to certify, among other things, that the loan was used for eligible payroll and other business costs, and that the business had verified the eligible payroll and nonpayroll costs for which the business requested forgiveness. The business also was required to submit documentation to the lender verifying payroll costs.

10.      At all times relevant to the Indictment:

**Lenders**

11.      Bank 1 was a financial institution based in the Commonwealth of Pennsylvania. Bank 1 was an approved SBA lender of PPP loans.

**Individuals and Entities**

12.      JOSHUA LYBOLT was a resident of the State and District of Colorado.

13.      JOSHUA LYBOLT represented himself to be an owner or co-owner of the following businesses: A Prime Real Estate Corporation, LLC ("Prime Real Estate");

Broker Life, LLC ("Broker Life"); Lifstyl Real Estate, LLC ("Lifstyl Real Estate"); and JMXE Capital, LLC ("JMXE Capital").

14.     MAGDALENA LYBOLT was a resident of the State and District of Colorado and married to JOSHUA LYBOLT.

15.     MAGDALENA LYBOLT represented herself to be a co-owner of the following businesses: Prime Real Estate; Broker Life; Lifstyl Real Estate; and JMXE Capital.

**The Scheme**

16.     Beginning in or around April 2020, and continuing through at least in or around August 2022, within the State and District of Colorado and elsewhere, defendants JOSHUA LYBOLT and MAGDALENA LYBOLT devised, intended to devise, and participated in a scheme and artifice to defraud and to obtain money and property from the United States and Bank 1, and aided and abetted the same, by means of materially false and fraudulent pretenses, representations, and promises (hereinafter referred to as the "Scheme"). The Scheme was executed in connection with seeking loans under the EIDL and PPP loan programs as authorized by the CARES Act by submitting false and fraudulent applications for EIDLs, EIDGs, EIDL modifications, and a PPP loan on behalf of companies that were already closed prior to the COVID-19 Pandemic, according to sworn representations made by JOSHUA LYBOLT and MAGDALENA LYBOLT in prior bankruptcy proceedings.

**Manner and Means of the Scheme**

It was part of the Scheme that:

EIDL Scheme

17.     From in or around April 2020, and continuing through at least in or around August 2022, JOSHUA LYBOLT prepared and submitted fraudulent EIDL applications to the SBA on behalf of business entities that he and MAGDALENA LYBOLT owned.

18.     In these fraudulent EIDL applications, JOSHUA LYBOLT made materially false statements regarding the number of employees, gross revenues, and cost of goods sold purportedly relating to these business entities. He also falsely certified that the business entities suffered losses as a result of the COVID-19 pandemic.

19.     In fact, none of the business entities listed in the EIDL applications were in operation as of January 31, 2020 as required to receive relief funds, as confirmed by JOSHUA LYBOLT and MAGDALENA LYBOLT in bankruptcy proceedings that occurred in 2020. Specifically:

      a.   On or about January 20, 2020, JOSHUA LYBOLT and MAGDALENA LYBOLT filed for Chapter 7 Bankruptcy.

      b.   On or about March 3, 2020, JOSHUA LYBOLT and MAGDALENA LYBOLT told a U.S. Bankruptcy Trustee, under oath, that all of the businesses included in their bankruptcy filing were closed and no longer operational. Among these closed businesses were Broker Life, JMXE Capital, Lifstyl Real Estate, A Prime Real Estate Corporation, and Commissions Fast.

c.   On or about April 27, 2020, a U.S. Bankruptcy Judge entered an Order of Discharge granting JOSHUA LYBOLT and MAGDALENA LYBOLT's bankruptcy petition and discharging more than $4,655,000 in claims.

20.     From in or around April 2020, and continuing until at least in or around August 2022, JOSHUA LYBOLT submitted six fraudulent EIDL applications to the SBA on behalf of the following business entities: Prime Real Estate, Broker Life, Lifstyl Real Estate, JMXE Capital, and Commissions Fast.

21.     In these fraudulent EIDL applications, JOSHUA LYBOLT made materially false statements regarding, *inter alia*, the entities' gross revenues and cost of goods sold. JOSHUA LYBOLT further falsely certified that the information provided in the EIDL applications was true and accurate. JOSHUA LYBOLT also falsely certified that the funds would be used solely as working capital to alleviate economic injury caused by the COVID0-19 pandemic and only to pay permissible business expenses when, in fact, JOSHUA LYBOLT and MAGDALENA LYBOLT used the bulk of the proceeds for their personal benefit.

22.     JOSHUA LYBOLT and MAGDALENA LYBOLT also submitted false and fraudulent documentation in support of the applications for EIDLs, EIDGs, and EIDL modifications. Specifically, in support of the EIDL modification requests for Lifstyl Real Estate, JOSHUA LYBOLT and MAGDALENA LYBOLT signed an Amended Loan Authorization and Agreement certifying that "All representations in the Borrower's Loan application (including all supplementary submissions)" were "true, correct and complete" and "offered to induce SBA to make" the loan to Lifstyl Real Estate. JOSHUA LYBOLT

7

and MAGDALENA LYBOLT also certified that Lifstyl Real Estate would not distribute the business entity's assets to any owner, partner, employee, or other company. Furthermore, by signing the Amended Loan Authorization, JOSHUA LYBOLT and MAGDALENA LYBOLT falsely certified that Lifstyl Real Estate would "use all the proceeds" of the loan "solely as working capital to alleviate economic injury caused by" the COVID-19 pandemic.

23. As a result of the EIDL Scheme, the SBA approved and funded four EIDL applications, two EIDGs, and six EIDL modification requests, for a total of $4,950,000 in EIDLs and modifications and $3,000 in EIDGs. These funds, less $400 in UCC-filing fees, were disbursed as follows:

    a. **Prime Real Estate**: $1,999,900 in EIDL funds, including one EIDL modification, deposited into a bank account controlled by JOSHUA LYBOLT.

    b. **Broker Life**: $450,900 in EIDL and EIDG funds, including one EIDL modification, deposited into a bank account controlled by JOSHUA LYBOLT.

    c. **JMXE Capital**: $499,900 in EIDL funds, including one EIDL modification, deposited into a bank account controlled by JOSHUA LYBOLT.

    d. **Lifstyl Real Estate**: $2,001,900 in EIDL and EIDG funds, including three EIDL modifications, deposited into a bank account controlled by JOSHUA LYBOLT.

24.     In addition to the EIDLs and EIDGs that were funded by the SBA, JOSHUA LYBOLT submitted additional fraudulent EIDL applications and EIDL modification requests that were declined or rejected prior to funding.

PPP Scheme

25.     From in or around February 2021, and continuing through at least in or around March 2021, JOSHUA LYBOLT submitted and caused to be submitted a fraudulent PPP Borrower Application Form and supporting documents to Bank 1 on behalf of Broker Life. In the fraudulent PPP Borrower Application Form, JOSHUA LYBOLT made materially false statements. Specifically:

    a.  JOSHUA LYBOLT falsely answered "No," when asked on the form whether the Broker Life, its owners, or any business owned or controlled by the owners, had ever obtained a direct or guaranteed loan from the SBA that was either delinquent or had defaulted in the last 7 years, causing a loss to the government. In fact, in or around June 2019, JOSHUA LYBOLT, as an owner of Prime Real Estate, failed to make required payments on at least two loans that were guaranteed by the SBA and those loans thereafter went into default.

    b.  JOSHUA LYBOLT also falsely certified that Broker Life was in operation on February 15, 2020 and had not permanently closed. In truth, Broker Life stopped operating on or about December 31, 2018, according to the voluntary petition for bankruptcy filed by JOSHUA LYBOLT and MAGDALENA LYBOLT. Furthermore, on March 3, 2020, JOSHUA

LYBOLT and MAGDALENA LYBOLT told the U.S. Bankruptcy Trustee, under oath, that all of the businesses included in their bankruptcy filing documentation, including Broker Life, were closed and no longer operating.

c. JOSHUA LYBOLT further falsely certified that the information provided in the PPP Borrower Application Form and the information provided in all supporting documents and forms was true and accurate in all material respects.

26. On or about March 3, 2021, Bank 1 funded the PPP loan for Broker Life in the amount of $41,667.

27. On or about August 18, 2021, JOSHUA LYBOLT submitted an application to the SBA seeking forgiveness of the full $41,667 PPP loan, which the SBA granted.

28. JOSHUA LYBOLT routinely transferred EIDL and PPP funds derived from the Scheme between bank accounts controlled by JOSHUA LYBOLT and between bank accounts controlled by JOSHUA LYBOLT and MAGDALENA LYBOLT. JOSHUA and MAGDALENA LYBOLT utilized EIDL and PPP funds to purchase goods and property, including vehicles, real estate, vacations, and country club memberships.

**Execution of the Scheme**

29. On or about the dates set forth below, in the State and District of Colorado, and elsewhere, defendants JOSHUA LYBOLT and MAGDALENA LYBOLT caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, and aided and abetted the same,

as set forth below:

| Count | Defendant | Date | Description of Wire |
|-------|-----------|------|---------------------|
| 1 | JOSHUA LYBOLT | June 12, 2020 | Payment file for EIDL of $114,400 from SBA finance center in Colorado to U.S. Treasury disbursing office outside of Colorado caused by JOSHUA LYBOLT's submission of Broker Life's EIDL application. |
| 2 | JOSHUA LYBOLT | July 29, 2020 | Payment file for EIDL of $124,500 from SBA finance center in Colorado to U.S. Treasury disbursing office outside of Colorado caused by JOSHUA LYBOLT's submission of JMXE Capital's EIDL application. |
| 3 | JOSHUA LYBOLT | March 1, 2021 | Broker Life PPP Borrower Application Form electronically submitted in Colorado and routed interstate to Bank 1 outside of Colorado. |
| 4 | JOSHUA LYBOLT | December 21, 2021 | Payment file for EIDL of $499,900 from SBA finance center in Colorado to U.S. Treasury disbursing office outside of Colorado caused by JOSHUA LYBOLT's submission of Prime Real Estate's EIDL application. |
| 5 | JOSHUA LYBOLT<br><br>MAGDALENA LYBOLT | April 6, 2022 | Payment file for EIDL of $1,290,000 from SBA finance center in Colorado to U.S. Treasury disbursing office outside of Colorado caused by JOSHUA LYBOLT and MAGDALENA LYBOLT's submission of Lifstyl Real Estate's 3rd Modification of Note. |

All in violation of Title 18, United States Code, Sections 1343 and 2(a).

<u>COUNTS 6-13</u>
**MONEY LAUNDERING, 18 U.S.C. § 1957**

30.     The allegations in paragraphs 1 through 28 are re-alleged and incorporated as if fully set forth herein.

31.     On or about the dates set forth below, in the State and District of Colorado, and elsewhere, JOSHUA LYBOLT, knowingly engaged in and attempted to engage in monetary transactions, specifically, deposits, withdrawals and movements and transfers of funds and monetary instruments, in and affecting interstate commerce, to entities listed below, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, specifically, wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the property involved in such monetary transactions represented the proceeds of some form of unlawful activity, as follows:

| Count | Date | Financial Transaction |
|---|---|---|
| **6** | June 24, 2020 | Payment of $47,553 by cashier's check number XXXXXX3367 drawn from Bank of America account xxxxxx3503 in the name of Broker Life and paid to the order of Walser Automotive Group for the purchase of a 2016 Land Rover Range Rover MP vehicle. |
| **7** | January 27, 2021 | Wire transfer of $95,170.35 from Bank of America account xxxxxx6183 in the name of JMXE Capital to T.D. Ameritrade account xxxxxx9375 in the name of Magdalena Wosiak. |
| **8** | September 2, 2021 | Payment of $25,000 by check drawn from Bank of America account xxxxxx0720 in the name of Broker Life and paid to the order of the Country Club at Castle Pines. |

| 9 | March 3, 2022 | Wire transfer of $902,803.84 from Bank of America account xxxxxx6718 in the name of Prime JMXE, LLC to Land Title Guarantee Company as payment for a real estate property located at 35 Lower Woodbridge Rd. # P157, Snowmass Village, CO 81615. |
| --- | --- | --- |
| 10 | March 29, 2022 | Payment of $30,000 by the Visa card ending 8565 drawn from Bank of America account xxxxxx6718 in the name of Prime JMXE and paid to Inspirato LLC. |
| 11 | May 27, 2022 | Wire transfer of $530,397.50 from Bank of America account xxxxxx7469 in the name of Lifstyl Real Estate to the Title Company of the Rockies for the purchase of the property located at 1061 W. Beaver Creek Blvd., #N202, Avon, CO 81620. |
| 12 | May 31, 2022 | Wire transfer of $22,258.50 from Bank of America account xxxxxx4710 in the names JOSHUA LYBOLT and MAGDALENA LYBOLT to the Heritage Vintage Sports Auctions. |
| 13 | August 17, 2022 | Payment of $58,000 by cashier's check number xxxxxx7338 drawn from Bank of America account xxxxxx4710 in the names of JOSHUA LYBOLT and MAGDALENA LYBOLT and paid to the order of Porsche Littleton for the purchase of a 2022 Porsche Taycan vehicle. |

All in violation of Title 18, United States Code, Section 1957.

**Forfeiture Allegation**

32.     The allegations contained in Counts 1 through 13 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and (a)(2), and Title 28, United States Code, Section 2461(c).

33.     Upon conviction of the violations alleged in Counts 1 through 5 of this Indictment involving the commission of violations of Title 18, United States Code,

Section 1343, defendant JOSHUA LYBOLT, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), and Title 28, United States Code, Section 2461(c) any and all of the defendant's right, title and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of such offense, including, but not limited to: a money judgment in the amount of proceeds obtained by the defendant.

34.    Upon conviction of the violations alleged in Count 5 of this Indictment involving the commission of violations of Title 18, United States Code, Section 1343, defendant MAGDALENA LYBOLT, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), and Title 28, United States Code, Section 2461(c) any and all of the defendant's right, title and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of such offense, including, but not limited to: a money judgment in the amount of proceeds obtained by the defendant.

35.    Upon conviction of the violations alleged in Counts 6 through 13 of this Indictment involving the commission of violations of Title 18, United States Code, Section 1957, defendant JOSHUA LYBOLT, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(1), any and all rights, title, and interest in all property involved in such offense or offenses, or property traceable to such property, including, but not limited to: a money judgment in the amount of proceeds obtained by the defendant.

36.     If any of the property described above, as a result of any act or omission of the defendant:

a)     cannot be located upon the exercise of due diligence;
b)     has been transferred or sold to, or deposited with, a third party;
c)     has been placed beyond the jurisdiction of the Court;
d)     has been substantially diminished in value; or
e)     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of JOSHUA LYBOLT and MAGDALENA LYBOLT up to the value of the forfeitable property.

A True Bill:

*Ink Signature on File in the Clerk's Office*
Foreperson

MATTHEW T. KIRSCH
Acting United States Attorney


By: *s/ Theodore O'Brien*
Theodore O'Brien
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Theodore.OBrien@usdoj.gov
Attorney for the Government